IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE NIEVES BRIONES <br> TDCJ No. 01219879, <br><br> Petitioner, <br><br> V. <br><br> DIRECTOR, TDCJ-CID, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | <br><br><br><br><br> No. 3:21-cv-957-B-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE**
<u>**UNITED STATES MAGISTRATE JUDGE**</u>

Petitioner Jose Nieves Briones – a Texas prisoner – was charged in Dallas County with one count of aggravated sexual assault of a child under 14, enhanced by a prior conviction for indecency with a child by contact. Dkt. No. 13-7 at 44. On February 12, 2004, a jury found him guilty as charged and sentenced him to life imprisonment. *State of Texas v. Jose Nieves Briones*, F-0255740-MN (195th Jud. Dist. Court, Dallas Cty., Feb. 12, 2004); Dkt. No. 13-4 at 35.

The Fifth Court of Appeals of Texas affirmed the conviction on July 15, 2005. *See Briones v. State*, 05-04-0238-CR, 2005 WL 1654582 (Tex. App. – Dallas July 15, 2005, no pet.). Briones did not file a petition for discretionary review (PDR) with the Texas Court of Criminal Appeals (CCA). *See* Dkt. No. 3 at 3.

Briones filed his first application for a state writ of habeas corpus on April 5, 2007. Dkt. No. 13-7 at 16. The CCA denied the application on July 16, 2008, without written order on findings of the trial court without a hearing. *Id.* at 3.

Briones filed a second state habeas application on September 20, 2020. Dkt. No. 3 at 4. The CCA dismissed the second application as a subsequent application under Texas Code of Criminal Procedure art. 11.07 § 4(a)-(c). *See Ex parte Briones*, WR-70,239-02 (Tex. Crim. App. March 31, 2021).

On April 26, 2021, Briones filed this federal habeas application pursuant to 28 U.S.C. § 2254. This action was referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) pursuant to Special Order 3-351 and a standing order of reference from United States District Judge Jane J. Boyle.

The State responded to Briones's application, arguing that it is untimely. *See* Dkt. No. 11. Briones filed a reply. Dkt. No. 16.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss Briones's application for a writ of habeas corpus with prejudice as time-barred.

**Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "introduced both 'simple logic' to the federal habeas landscape and uniform rules for federal courts to apply." *Wallace v. Mississippi*, 43 F.4th 482, 492 (5th Cir. 2022) (quoting *Smith v. Titus*, 141 S. Ct. 982, 987 (2021) (Sotomayor, J., dissenting from denial of cert.), then citing *Day*, 547 U.S. at 202 n.1)).

"Namely, it implemented a host of greatly needed procedural requirements for petitioners seeking habeas relief." *Id.* (citing *Brown v. Davenport*, 142 S. Ct. 1510,

1524 (2022) ("In many ways, the statute represented a sea change in federal habeas law.")).

One such requirement is "the one-year period for an individual in custody pursuant to a state-court judgment to file a § 2254 petition for habeas relief" that "begins running from the latest of four events." *Id.* at 497 (citing 28 U.S.C. § 2244(d)):

> (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The time during which a properly filed application for state post-conviction or other collateral review is pending is excluded from the limitations period. *See id.* § 2244(d)(2).

The one-year limitations period is also subject to equitable tolling – "a discretionary doctrine that turns on the facts and circumstances of a particular case," *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), and only applies in "rare and exceptional circumstances," *United States v. Riggs,* 314 F.3d 796, 799 (5th Cir. 2002) (citing *Davis v. Johnson,* 158 F.3d 806, 811 (5th Cir. 1998)).

"[A] litigant is entitled to equitable tolling of a statute of limitations only if the litigant establishes two elements: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)).

"'The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.' What a petitioner did both before and after the extraordinary circumstances that prevented him from timely filing may indicate whether he was diligent overall." *Jackson v. Davis*, 933 F.3d 408, 411 (5th Cir. 2019) (quoting *Holland*, 560 U.S. at 653; footnote omitted).

But "[a] petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *Hardy v. Quarterman*, 577 F.3d 596, 598 (5th Cir. 2009) (per curiam) (citation omitted). So, this "prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary *and* beyond [the litigant's] control." *Menominee Indian Tribe*, 577 U.S. at 257.

A showing of "actual innocence" can also overcome AEDPA's statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). But the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

That is, the petitioner's new, reliable evidence must be enough to persuade the Court that "'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329); *see also Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992) ("The Supreme Court has made clear that the term 'actual innocence' means *factual*, as opposed to *legal*, innocence – 'legal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence, as the Court stated in *McCleskey [v. Zant*, 499 U.S. 467 (1991)], means that the person did not commit the crime." (footnotes omitted)); *Acker v. Davis*, 693 F. App'x 384, 392-93 (5th Cir. 2017) (per curiam) ("Successful gateway claims of actual innocence are 'extremely rare,' and relief is available only in the 'extraordinary case' where there was 'manifest injustice.'" (quoting *Schlup*, 513 U.S. at 324, 327)).

## Analysis

Briones makes these claims for relief:

1. He was not provided an interpreter during all parts of the trial, and the interpreter misinformed him about the terms of the plea offer and his right not to testify;

2. The indictment charges two distinct offenses from the same criminal episode;

3. The jury charge failed to require a unanimous verdict because it allowed the jury to find he committed sexual assault by penetration or by contact;

4. The trial court erred by allowing the victim to testify about extraneous acts;

5. The conviction is based on perjured testimony from the victim regarding her sexual history;

6. The conviction constitutes double jeopardy because the indictment and jury charge alleged two distinct offenses;

7. He was deprived of a fair trial because the State was not required to elect which of multiple sexual encounters he was prosecuted under;

8. Trial counsel was ineffective for: (a) failing to object to the lack of interpreter; (b) failing to object to the indictment; (c) failing to object to the jury charge; (d) failing to object to the victim's testimony of extraneous acts; (e) failing to request a lesser-included offense instruction; (f) failing to request election by the State; (g) failing to object to SANE testimony; and (h) failing to inform Briones about a plea offer; and

9. Appellate counsel was ineffective for failing to brief and argue trial court error based on the denial of a limiting instruction and lack of election by the State.

Dkt. No. 3 at 14-21.

But, as explained below, the undersigned agrees with the State that Briones's federal petition is untimely and should be dismissed with prejudice.

### A. Timeliness Absent Tolling

The timeliness of most Section 2254 applications is determined under Subsection A of Section 2244, based on the date on which the state criminal judgment became final. Such a judgment becomes final under AEDPA "when there is no more 'availability of direct appeal to the state courts.'" *Frosch v. Thaler*, No. 2:12-cv-231, 2013 WL 271423, at *1 (N.D. Tex. Jan. 3, 2013) (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009)), *rec. adopted*, 2013 WL 271446 (N.D. Tex. Jan. 24, 2013).

Under Subsection A, Briones's judgment became final when his time for filing a PDR with the CCA expired on August 15, 2005, which was thirty days after his direct appeal concluded. *See Briones*, 2005 WL 1654582; *see also Engle v. Davis*, 804

F. App'x 283, 284 (5th Cir. 2020) (per curiam) ("Engle's judgment therefore became final, for purposes of § 2244(d)(1)(A), only when the time for seeking direct review of the Texas Court of Appeals' judgment dismissing his appeal expired upon his failure to file a timely petition for discretionary review, with the Texas Court of Criminal Appeals." (citations omitted)); Tex. Code. Crim. Proc. Art. 44.45(b)(2).

So, under Subsection A, Briones had until August 15, 2006, to file a federal habeas application. But he did not file one until April 26, 2021. *See* Dkt. No. 3 at 24.

And Briones's state habeas applications – filed on April 5, 2007, and September 20, 2020 – do not toll the federal limitations period because they were filed after the federal limitations period expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) ("[S]tate habeas application did not toll the limitations period under 28 U.S.C. § 2244(d)(2) because it was not filed until *after* the period of limitation had expired.").

Thus, Briones's petition is untimely absent tolling or a demonstration of actual innocence.

**B. Statutory Tolling**

Briones argues that Subsection B of Section 2244 supplies the accrual date because the prison law library where he is confined "did not and does not contain a copy of the 1-year limitation period in the Spanish language or law library personnel versed in the Spanish language," and this prevented him from filing a timely federal application because he only learned of the federal habeas process after the limitations period expired. Dkt. No. 3 at 22.

An inadequate prison law library can, in some cases, "constitute a state created

impediment" for purposes of Subsection B. *Egerton v. Cockrell*, 334 F.3d 433, 438-39 (5th Cir. 2003). In *Egerton* – the events of which took place shortly after the passage of the AEDPA – the Fifth Circuit found that a prison's failure to make available a copy of the AEDPA and its newly imposed statute of limitations, "without making some alternative arrangements to apprise prisoners of their rights," violated the First Amendment right to access the courts and was thus an unconstitutional state created impediment for purposes of Subsection B. *Id.* at 438.

But Briones has not alleged that the law library lacked any copy of the AEDPA – only a copy in Spanish. The undersigned has not located a case extending *Egerton* to such facts. To the contrary, courts have held that the absence of legal materials (including the AEDPA) or assistance in the inmate's native language does not, on its own, violate the inmate's right to access the courts because there is no "freestanding right to legal materials or assistance in any format or language." *See Sanchez v. Stephens*, 689 F. App'x 797, 799 (5th Cir. 2017) (per curiam) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); (*Guzman v. Dretke*, No. Civ. A. 3:05-CV-954-L, 2006 WL 36858, at *2 (N.D. Tex. Jan. 4, 2006) ("Plaintiff has failed to explain how the lack of AEDPA in Spanish or notice of AEDPA in Spanish interfered with his rights to access the courts. Rather, he is contending more generally that he is ignorant of the law because his native tongue is not English, but Spanish. This vague allegation is insufficient to state a constitutional violation."; citing *Lewis*, 518 U.S. at 351); *see also Oliveria-Coutinho v. Frakes*, 4:15CV3159, 2018 WL 10705070, at *5 (D. Neb. Apr. 5, 2018), *affirmed* 773 F. App'x 859 (8th Cir. 2019) (noting, in the context of a right to

access the courts claim, that "[f]ederal courts have not required prisons to provide access to legal materials in a prisoner's preferred language"); citing *Lambros v. Hawk*, 993 F. Supp. 1372, 1373 (D. Kansas. 1998); *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008); *Mendoza v. Carey*, 449 F.3d 1065, 1070 n.5 (9th Cir. 2006); *United States v. Soberanis-Sagrero*, No. CIV 07-2060, 2007 WL 2509724, at *2 (D. Minn. Aug. 30, 2007)).

Briones also complains, and includes an affidavit from another inmate in support, that the law books at his prison are "out of view" behind a counter that does not face the "offender for viewing perspective." Dkt. No. 16 at 20. Further, according to Briones, inmates are not allowed to "browse" books and must instead know what books they are looking for to check them out. *Id.*

But Briones does not link these complaints to his failure to file a timely federal habeas petition. Put differently, there is no causal relationship between difficulties accessing the books and the timeliness of Briones's petition. For one thing, Briones represents that he would not have been able to read or understand the books anyways, even if had they were more readily accessible, because they were in English (which, as explained above, is not problematic). *See, e.g.*, *Simmons v. United States*, 974 F.3d 796, 796 (6th Cir. 2020) ("That the statute requires a causal relationship between the impediment and not filing the [petition] is not controversial.").

And, even assuming that Briones could understand the relevant texts if he found them, he does not allege that he would not have been able to discover the AEDPA limitations period (indeed the inmate who provided an affidavit in support of

Briones's application was aware of it and noted that it is contained in a law library book). At most, he complains about general deficiencies in the law library, but, without corresponding allegations showing that those deficiencies actually prevented the filing of a timely habeas petition, tolling under Subsection B is inapplicable.

Briones also argues that Subsection D – the provision postponing accrual until the date that the factual predicate of the claim could have been discovered through due diligence – applies and that the limitations period began on August 29, 2020, the date that he acquired an affidavit from the victim showing that his conviction "was premised and based [on] perjury…" Dkt. No. 3 at 22.

In the affidavit, the complainant – who was less than 14 years old when the pertinent events occurred – asserts that she lied when she testified that she had not been sexually active before she entered a sexual relationship with Briones. *Id.* at 9. She also claims that she lied by claiming that she and Briones had plans "to go out together" – instead, it was only the complainant who "planned it." *Id.*

Liberally construing Briones's pleadings, this evidence would serve as the factual predicate for his claim that his conviction is unconstitutional because it is based on the complainant's perjury.

The Fifth Circuit has held that "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence" means the "date on which the petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015). And

the burden is on the petitioner to establish that the factual predicate of the claim could not have been discovered earlier through due diligence. *See*, *e.g.*, *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) (citing *Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2001)).

The Fifth Circuit has held that "having had the opportunity to cross-examine a witness does not trigger the date on which a defendant 'should have been aware of that witness's perjured testimony'" for purposes of Subsection D. *In re Carty*, 824 F. App'x 271, 277 (5th Cir. 2020) (per curiam) (citing *Young*, 789 F.3d at 529). But in the context of recanting witness affidavits and accrual under Subsection D, federal courts have held that the limitations period begins when the petitioner knew or could have discovered that the witness would recant his or her testimony, not when the affidavit is executed. *Bates v. Metrish*, No. 07-11073, 2010 WL 1286413, at *9 (E.D. Mich. Mar. 30, 2010); *see also Webb v. Bell*, No. 2:07-CV-12689, 2008 WL 2242616, at *5 (E.D. Mich. May 30, 2008) (noting that date of notarized affidavit merely informs the court when it was signed, not when the witness recanted his testimony or whether the petitioner exercised due diligence); *Deloney v. McCann*, 229 F. App'x 419, 422 (7th Cir. 2007) (ruling that limitations period began when the petitioner learned of relevant facts not when he obtained supporting evidence and noting that the petitioner did not argue that he was unaware of the witness's recantation until he obtained her affidavit); *Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 711-12 (E.D. Pa. 2009) (limitations period began to run when the witness's sister contacted petitioner in prison and informed him that the witness would recant); *Chism v.*

*Johnson*, No. 3-99-CV-2412-BD, 2000 WL 256875, at *2 (N.D. Tex. Mar. 7, 2000) (rejecting argument that petitioner could not have discovered the factual predicate for his claim until the witness executed affidavit recanting trial testimony).

Here, although Briones says that he received evidence of the recantation on August 29, 2020 – in the form of the recanting affidavit executed that same day – he does not allege that he was unaware of the recantation until he got the affidavit. Even if he did make that argument, it would not speak to the diligence, if any, that he used up until that point.

At bottom, Briones provides no argument or evidence to establish that he could not have – through due diligence – discovered the alleged perjury before the complainant executed her recanting affidavit on August 29, 2020. He therefore fails to establish that Subsection D (or B) supplies the accrual date for his federal habeas claims.

### C. Equitable Tolling

Briones seeks equitable tolling. *See, e.g.*, Dkt. No. 16 at 2. But he has not shown a basis for it. He claims that he cannot speak, understand, or write the English language. Dkt. No. 16 at 4. Of note, he argues that he was unfamiliar with the AEDPA and that the law library lacked a copy of it in Spanish. He complains about the lack of "law library personnel versed in the Spanish language." Dkt. No. 3 at 22.

But Briones's ignorance of the law and inability to speak, write, and/or understand English are not grounds for equitable tolling. *See, e.g.*, *Cantu v. Stephens*, Civil Action No. 7:14-CV-757, 2016 WL 1253839, at *7 (S.D. Tex. Feb. 25, 2016), *rec.*

*accepted* 2016 WL 1247229 (S.D. Tex. Mar. 30, 2016) (noting that the Fifth Circuit has not addressed equitable tolling in the context of a petitioner's inability to speak English, but "several other courts of appeals and many lower courts have found that lack of fluency in English is not an extraordinary circumstance that would justify equitable tolling") (collecting cases); *Samayoa v. Davis*, Civil Action No. H-19-5000, 2020 WL 3618513, at *3 (S.D. Tex. July 2, 2020) ("Samayoa notes that he is a *pro se* prisoner who does not know the law and does not speak English. Although Samayoa represents himself, it is settled that a prisoner's *pro se* status, incarceration, and ignorance of the law do not excuse his failure to file a timely petition and are not grounds for equitable tolling."); citing *Felder v. Johnson*, 204 F.3d 168, 171-72 (5th Cir. 2000); *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir. 2002); *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 478 (5th Cir. 1991)).

Nor does Briones allege what efforts he made to obtain assistance from a Spanish-speaking translator, either inside or outside the prison, before the AEDPA limitations period expired. Under these circumstances equitable tolling is unavailable. *Samayoa*, 2020 WL 3618513, at *3 (citing *Mendoza*, 449 F.3d at 1069 (concluding that "a non-English speaking petitioner seeking equitable tolling must, at a minimum, demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source"); *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008) (absent a showing of due diligence, a petitioner's bare allegation that he lacked access to a translator during

the limitations period cannot justify equitable tolling for a language deficiency); *Yang*, 525 F.3d at 929 (lack of English language proficiency is not an extraordinary circumstance that warrants equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) ("An inability to speak, write and/or understand English, in and of itself, does not automatically" justify equitable tolling); *Mendoza v. Minnesota*, 100 F. App'x 587, 588 (8th Cir. 2004) (per curiam) (lack of fluency in English is not an extraordinary circumstance that warrants equitable tolling).

Briones also claims that the limitations period was tolled until he received actual knowledge of the decision in his direct appeal. *See* Dkt. No. 16 at 5. He claims that he did not receive knowledge that his appeal had been denied until December 6, 2006, when he wrote the appellate court asking about the appeal's status. *See id.* at 5-6. He faults his appellate counsel for falsely advising him in September 2005 that there had not been a decision in his appeal. *See id.* at 6. He faults his appellate counsel for telling Briones that he would notify him when a decision on the direct appeal came down, but he never did. *See id.* at 4-5.

Even if equitable tolling applied until December 6, 2006, his petition is still untimely by more than a decade. Under that scenario, Briones's limitations period would have commenced on January 5, 2007 – the expiration of Briones's time to seek direct review of the conviction. It would have been tolled when Briones filed his first state habeas application on April 5, 2007. But that tolling would have ended on July 16, 2008, when the CCA denied Briones's application. *See* Dkt. No. 13-7 at 2. So, at the time the CCA denied his state application, he would have had until April 17, 2009

(275 days from July 16, 2008), to file his federal habeas application, but he did not do so until April 26, 2021.

Briones seems to argue that his initial state habeas application is still pending for tolling purposes because a mandate was never issued, so this federal application is therefore timely. *See* Dkt. No. 16 at 7.

The undersigned cannot agree. There is no indication from the record that a mandate was issued in relation to the denial of Briones's 2007 state habeas application, but "[t]he [CCA] does not issue a mandate in every habeas case." *Ramey v. Davis*, 314 F. Supp. 3d 785, 798 (S.D. Tex. 2018). "A mandate only issues in cases where the matter is 'set for submission' by the [CCA]." *Id.* In fact, "[i]n the standard habeas case, no mandate issues and a decision by the [CCA] ends state habeas review." *Id.* (citing *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)) (stating that a habeas "application becomes final after a decision by the state's high court").

It does not appear that Briones's first state habeas application was "set for submission," so no mandate would have issued, and the CCA's disposition was final on the date it was issued – July 16, 2008. *See Rivera v. Director, TDCJ*, Civil Action No. 1:15-CV-338, 2018 WL 4610590, at *2 (E.D. Tex. Sept. 26, 2018) ("In this case, the petitioner's state applications were not set for submission and mandates were not issued. Therefore, the state applications were only pending through August 19, 2015, when they were denied by the Texas Court of Criminal Appeals.").

And, finally, Briones argues that the CCA never issued a lawful decision on his initial habeas petition because the order denying it was signed only by a single judge

and not the necessary quorum, which is supposedly in violation of the Texas Constitution and Texas Rules of Appellate Procedure. *See* Dkt. No. 16 at 9.

Again, the undersigned cannot agree. Briones has cited no jurisprudence in support of this argument. Instead, it appears that there was an intra-court dispute over whether dispositions of certain habeas applications by individual CCA judges was lawful, with most judges agreeing that it was. *See Ex parte Bernal*, 508 S.W.23d 272, 273-284 (Tex. Crim. App. 2016). The undersigned has located no case holding that the disposition of a writ application by a single CCA judge is unlawful and thus a legal nullity – much less a federal case supporting Briones's argument that such a case would still be pending before the CCA and perpetually tolling the federal limitations period.

For all these reasons, Briones is not entitled to equitable tolling.

**D. Actual Innocence**

Finally, Briones argues that his federal petition is timely because of his actual innocence. *See, e.g.*, Dkt. No. 16 at 11-12. He points to the complainant's affidavit – the one in which she admits that she was not truthful about her sexual history before Briones – in support. *See id.* He also argues that, because he was convicted in violation of the Constitution's Double Jeopardy Clause, he is actually innocent. *See id.* at 16.

Again, the actual innocence gateway is only available to a petitioner who presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of

- 16 -

nonharmless constitutional error." *McQuiggin,* 569 U.S. at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

Briones's new evidence does not support or even speak to his innocence. That the complainant engaged in sexual activity before doing so with Briones does not negate the fact that the two had a sexual relationship, which, for Briones, amounted to aggravated sexual assault under Texas law. *See* TEX. PENAL CODE § 22.021. The same is true for the vague statement that it was the complainant, and not Briones, who planned for the two of them to "go out" together – this does not establish Briones's innocence.

At bottom, the affidavit is not enough to persuade the Court that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329.

As for Briones's argument that an alleged double jeopardy violation demonstrates his actual innocence, the undersigned cannot agree. Demonstrating actual innocence means demonstrating that the petitioner is factually innocent, not merely that there is a legal insufficiency of his or her guilt. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). Actual innocence means factual, not legal, innocence. *See Johnson v. Hargett*, 978 F.2d 855, 859-60 (5th Cir. 1992). "'[L]egal' innocence, of course, would arise whenever a constitutional violation by itself requires reversal, whereas 'actual' innocence…means that the person did not commit the crime." *Id.*

Thus, even if there were a double jeopardy violation, this only establishes a legal insufficiency – not actual innocence.

In sum, Briones has not established evidence of innocence strong enough to show that no juror, acting reasonably, could have voted to convict him, and he is not entitled to the actual innocence exception.

### Recommendation

The Court should dismiss Briones's federal habeas application with prejudice because it is time-barred.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED. January 5, 2024.


_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE