IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSE NIEVES BRIONES,       ) | |
|     ID # 01219879,              ) | |
|         Petitioner,            ) | |
|                          ) | |
| vs.                                             ) | No. 3:21-CV-0957-B-BN |
|                          ) | |
| DIRECTOR, TDCJ-CID              ) | |
|         Respondent.               ) | |

**ORDER ACCEPTING FINDINGS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE AND
DENYING CERTIFICATE OF APPEALABILITY**

The United States Magistrate Judge issued findings, conclusions, and a recommendation (FCR), recommending that Petitioner Jose Nieves Briones's federal habeas application be dismissed with prejudice as untimely. Doc. 22. Petitioner filed objections. Doc. 29. After reviewing the FCR *de novo* in accordance with 28 U.S.C. § 636(b)(1), the Court is of the opinion that the FCR is correct and is accepted as the Findings and Conclusions of the Court. The petitioner's application for federal habeas relief pursuant to 28 U.S.C. § 2254 is denied and will be dismissed by a separate judgment. The Court **OVERRULES** Petitioner's objections for the reasons explained below.

In his first objection, Petitioner claims that the Magistrate Judge erred in concluding that his perjury claim is untimely. He argues that, under 28 U.S.C. § 2244(d)(1)(D), the claim accrued on August 29, 2020, when he received a recanting affidavit from the complainant that established the factual predicate for the claim. *See* 28 U.S.C. § 2244(d)(1)(D) (providing that the AEDPA runs from the latest of four dates, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"). And, he continues, because he filed his federal application in April 2021, this claim is timely.

The Magistrate Judge rejected this argument because "although [Petitioner] says that he received evidence of the recantation on August 29, 2020 – in the form of the recanting affidavit executed the same day – he does not allege that he was unaware of the recantation until he got the affidavit. Even if he did make that argument, it would not speak to the diligence, if any, that he used up until that point." Doc. 22 at 12.

Petitioner now alleges that he was unaware of the recantation until he received the affidavit. And, as for diligence, he complains that it would have been difficult for him to obtain any information from the complainant because he was precluded from contacting her and could not afford to hire an investigator . Doc. 29 at 6-7.

Nevertheless, Petitioner still fails to establish that Section 2244(d)(1)(D) applies. The complainant's affidavit states that, contrary to her trial testimony, she had sex with others before Petitioner and that it was the complainant—not Petitioner—who instigated their relationship. *See* Doc. 3 at 9. But Petitioner would have had personal knowledge of the fact that it was the complainant who instigated a relationship and thus would known about the supposed perjury at the time of trial, so Section 2244(d)(1)(D) is inapplicable to this aspect of the claim. *See, e.g., Outlaw v. Lumpkin*, 2021 WL 5774325, at *1-2 (N.D. Tex. Aug. 31, 2021) (concluding, for purposes of Section 2244(d)(1)(D), that petitioner had notice of facts supporting claim at trial when he had personal knowledge of the witness's lies, not years later when he obtained a recanting affidavit).

As for the statement about the complainant's sexual history, while Petitioner complains that it would have been difficult to obtain this information in jail, he does not explain what efforts, if any, he made to investigate. So, he has not established due diligence, and Section 2244(d)(1)(D) is inapplicable.

2

But even if this claim was timely and reviewed *de novo*, Petitioner would not be entitled to relief. To establish a due process violation related to the prosecution's use of perjured testimony, a petitioner must demonstrate that (i) the testimony in question was actually false, (ii) the prosecutor was aware of the perjury, and (iii) the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

Petitioner fails on at least the third element. The trial testimony in question is not material because it is not relevant to the elements of Petitioner's offense: aggravated sexual assault of a child. Specifically, under Texas law, at the time of the events in question, a person committed the offense of aggravated sexual assault of a child if he "cause[d] the penetration of the anus or female sexual organ of a child by any means..." TEX. PENAL CODE ANN. § 22.021(a)(B)(i) (Vernon Supp. 2002). The complainant does not recant her testimony that she had sexual relations with Petitioner when she was younger than 14. That she had sex with others before Petitioner is irrelevant, as is the issue of whose idea it was to "go out together."

Petitioner's perjury claim is untimely, or, alternatively, lacks merit. His first objection is accordingly **OVERRULED**.

In his second objection, Petitioner claims that the Magistrate Judge erred in determining that he was not entitled to equitable tolling due to his unfamiliarity with the English language and the fact that his prison law library did not have a copy of the AEDPA in Spanish or translators who could assist him in legal matters.

Equitable tolling is a discretionary doctrine warranted in only "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998). It is appropriate where the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary

3

circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotations marks and citation omitted).

The Magistrate Judge correctly noted that a prisoner's ignorance of the law and inability to speak, write, and understand English is not, alone, sufficient to warrant equitable tolling. Doc. 22 at 14 (citing *Cantu v. Stephens*, 2016 WL 1253839, at *7 (S.D. Tex. Feb. 25, 2016), *rec. accepted* 2016 WL 1247229 (S.D. Tex. Mar. 30, 2016)). As for an inability to communicate and understand English coupled with a prison's lack of legal materials in the petitioner's native tongue or translators, the Fifth Circuit has not addressed whether this could warrant equitable tolling. Other circuits have reached different conclusions. *Compare*, *e.g.*, *Pabon v. Mahoney*, 654 F.3d 385, 401 (3d Cir. 2011) (inability to read or understand English, combined with denial of translation or legal assistance, can constitute an extraordinary circumstance triggering equitable tolling); *Mendoza v. Carey*, 449 F.3d 1065, 1070 (9th Cir. 2006) (same) *with Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (noting that the "Colorado Department of Corrections is under no duty to provide access to legal materials in a prisoner's preferred language").

But most district courts in this Circuit refuse to apply equitable tolling in such circumstances. *See, e.g., Andino v. Byrd*, 2015 WL 4250760, at *3 (N.D. Miss. July 13, 2015); *Navar-Garcia v. U.S.*, 2013 WL 327669, at *3 (W.D. Tex. Jan. 29, 2013); *United States v. Gilbert-Alvarez*, 2006 WL 3761888, at *7 (S.D. Tex. Dec. 21, 2006) ("Even if the Court accepted [the movant's] allegations concerning the alleged lack of Spanish language assistance in the library in their entirety as true, he would not be entitled to equitable tolling. Equitable tolling is not required simply because a petitioner is unfamiliar with the legal process, is unrepresented, or is illiterate.") (collecting cases); *but see United States v. Gutierrez*, 2012 WL 1606659, at *2 (W.D. La. May 3, 2012) (concluding that

4

equitable tolling could apply when prisoner could not comply with AEDPA because the prison did not provide access to AEDPA-related materials, translation, or legal assistance in his language).

But even if Petitioner had demonstrated an extraordinary circumstance, he has not shown that he exercised the requisite diligence to justify equitable tolling. If the extraordinary circumstance was the inability to understand English coupled with a lack of prison resources or translators, this circumstance ceased to exist by April 2007, when Petitioner filed a detailed state habeas application.

Petitioner does not explain why it took him more than a decade to file a federal habeas application after the extraordinary circumstance ceased to exist. *See, e.g., Cano v. Director, TDCJ-CID*, 2021 WL 5017345, at *5 (N.D. Tex. Sept. 17, 2021), *rec. accepted* 2021 WL 5015504 (N.D. Tex. Oct. 28, 2021), *certificate of appealability denied* 2022 WL 16544203 (5th Cir. May 26, 2022), *cert denied* 143 S. Ct. 381 (2022) (explaining that the petitioner must demonstrate diligence from the time the extraordinary circumstance ends until he files the federal habeas application).

Accordingly, the Magistrate Judge did not err in concluding that Petitioner was not entitled to equitable tolling, and Petitioner's second objection is **OVERRULED**.

In his third objection, Petitioner claims that his April 5, 2007 state habeas application is still pending because a mandate was never issued, thus perpetually tolling the deadline for him to file a federal habeas application. *See* 28 U.S.C. § 2241(d)(2).

The Magistrate Judge rejected this argument as follows:

There is no indication that a mandate was issued in relation to the denial of Briones's 2007 state habeas application, but "[t]he [CCA] does not issue a mandate in every habeas case." *Ramey v. Davis*, 314 F.Supp.3d 785, 798 (S.D. Tex. 2018). "A mandate only issues in cases where the matter is 'set for submission' by the [CCA]." *Id.* In fact, "[i]n the standard habeas case, no mandate issues and a decision by the [CCA] ends state habeas review." *Id.* (citing *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999)) (stating that a habeas "application becomes final after a decision by the state's high

5

court").

It does not appear that Briones's first state habeas application was "set for submission," so no mandate would have issued, and the CCA's disposition was final on the date it was issued – July 16, 2008. *See Rivera v. Director, TDCJ*, Civil Action No. 1:15-CV-338, 2018 WL 4610590, at *2 (E.D. Tex. Sept. 26, 2018) ("In this case, the petitioner's state applications were not set for submission and mandates were not issued. Therefore, the state applications were only pending through August 19, 2015, when they were denied by the Texas Court of Criminal Appeals.").

Doc. 22 at 15.

Petitioner does not show that that analysis is incorrect. Petitioner's third and final objection is **OVERRULED**.

Finally, in accordance with Fed. R. App. P. 22(b) and 28 U.S.C. § 2253(c), and after considering the record in this case, the recommendation of the Magistrate Judge, and the Court's reasoning in this order, Petitioner is **DENIED** a Certificate of Appealability. The Court adopts and incorporates by reference the Magistrate Judge's Findings, Conclusions, and Recommendation in support of its finding that Petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).[1]

---

[1]Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, as amended effective on December 1, 2009, reads as follows:

**(a) Certificate of Appealability.** The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

6

But, if Petitioner does file a notice of appeal, he must either pay the appellate filing fee of $605.00 or move for leave to proceed *in forma pauperis* on appeal.

**SIGNED this 22nd day of March, 2024.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

---

**(b) Time to Appeal.** Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules. A timely notice of appeal must be filed even if the district court issues a certificate of appealability.